IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No.  04-cv-01471-LTB-CBS

DUNG NGUYEN,

      Plaintiff,

v.

GAMBRO BCT, INC., and
GAMBRO, INC.,

      Defendants.

_____

ORDER
_____

     The plaintiff, Dung Nguyen, alleges in her First Amended Compliant that the defendants,

Gambro BCT, Inc. and Gambro, Inc. (collectively, "Gambro") wrongfully terminated her

employment.  Gambro has moved for dismissal or, in the alternative, to have struck from the

First Amended Complaint two paragraphs concerning alleged findings of the Colorado

Department of Labor and Employment ("CDLE").  Gambro has also moved for summary

judgment.  The motions are adequately briefed and oral argument would not materially aid their

resolution.  For the reasons stated below, I DENY the motion to dismiss or strike and GRANT

the motion for summary judgment.

**I.  Motion to dismiss or strike**

     Briefly, Ms. Nguyen alleges that Gambro suspended and later discharged her for

speaking Vietnamese while working.  She alleges that the CDLE so found and has granted her

unemployment benefits as a result.  She alleges that additional grounds for Gambro's

termination of her employment included her Vietnamese ancestry and her intention to bring a discrimination claim against Gambro for undisclosed earlier transgressions.

Gambro doubts that any CDLE findings can provide evidentiary support for Ms. Nguyen's claims because, it claims, it did not appear before the CDLE or defend itself in the CDLE proceedings.  Gambro does not state whether the CDLE gave it the opportunity to appear. In any event, review under Fed. R. Civ. P. 12(b) is not the appropriate forum for consideration of factual disputes; I accept as true and view in the light most favorable to Ms. Nguyen all well-pled allegations in the First Amended Complaint.  *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The motion to strike is denied.

For the reasons stated below, the motion to dismiss is moot and is for that reason also denied.

## II.  Motion for summary judgment

### A.  Facts

The following facts appear from the record.

On May 31, 2001, Gambro hired Ms. Nguyen, who was born in Vietnam and is of Vietnamese ancestry, to work on a manufacturing assembly line.  Ms. Nguyen does not read or write English, speaks little English, and has no high school diploma or equivalent.  Gambro's policies require employees to possess those skills and qualifications.  Ms. Nguyen guessed at the correct answers to a written examination that Gambro administered to her; her husband wrote her application; neither Gambro nor Ms. Nguyen can explain how Ms. Nguyen eluded the high-school education requirement.  A July 5, 2001 performance review disclosed that Ms. Nguyen was at that time doing "very good" work but needed to "work more actively to promote positive

exchanges" and to deal with "potential conflict situations" with her co-workers.

Kevin Boltz, the Manager of the production area in which Ms. Nguyen worked, stated in an affidavit that business on the production floor is conducted primarily in English.  He has produced guidelines, applicable on the production floor at the time of Ms. Nguyen's discharge, that require employees to "communicate process related issues in English."  The stated purposes of the guidelines are two: to ensure compliance with production standards and to ensure that all employees feel included "as a valuable member of the team."  Mr. Boltz explained that English is for many employees not a primary language, that a common language is necessary for communicating production demands, and that some employees have in the past suspected that they were the subjects of conversations held in languages that they could not understand.  He stated that Gambro encourages employees to explain procedures to co-workers in languages other than English when communication in English would prove less effective.

Mr. Boltz identified several incidents that precipitated Ms. Nguyen's termination, which he authorized.  In the summer of 2003 a co-worker complained that Ms. Nguyen had touched various male co-workers in the groin.  For this, Beth Bohm, Ms. Nguyen's supervisor at the time, suspended Ms. Nguyen.  In the autumn of 2003 a co-worker named Sumiarsih Suharsono complained to Michelle Gonzales, another supervisor, that Ms. Nguyen and another employee had spoken disrespectfully about Ms. Suharsono in Vietnamese, a language that Ms. Suharsono does not understand.  After issuing a warning, Ms. Gonzales suspended Ms. Nguyen.  In February, 2004 Ms. Nguyen again initiated a conversation in Vietnamese and again Ms. Suharsono suspected that she was the subject of the parley.  Ms. Gonzales and Mark Genkinger, a member of the human resources department, took Ms. Nguyen aside and instructed her how

3

better to accommodate her co-workers.  They instructed her to keep their conversation in confidence for Ms. Suharsono's protection and Ms. Nguyen agreed.  Upon returning to the production floor, Ms. Nguyen "immediately started talking with co-workers about" the conversation.  Declaration of Kevin M. Boltz, 7; Declaration of Michelle Gonzales, 10.   For this breach of confidentiality Mr. Boltz decided to fire Ms. Nguyen.

Ms. Gonzales, Mr. Genkinger, Ms. Bohm, and Ms. Suharsono have by affidavit substantially affirmed Mr. Boltz's recitation.  Ms. Gonzales added some details: she contemplated having Ms. Nguyen discharged only after Ms. Nguyen breached her oral promise of confidentiality; she learned of the breach from a percipient witness named Denise Hinojosa; Ms. Nguyen confessed to the breach when confronted.  Only after Ms. Gonzales and Mr. Genkinger notified Ms. Nguyen of her termination on February 27, 2004 did Ms. Nguyen state her intention to retain an attorney and file a claim.  Ms. Nguyen neither complained of discrimination nor stated the basis for her intended claim.

Ms. Hinojosa has affirmed by affidavit that Ms. Nguyen spoke in her presence about the confidential conversation with Ms. Gonzales and Mr. Genkinger.  Another Gambro employee, Marina Martinez, has affirmed that Ms. Nguyen spoke with her about the conversation.

In a February 26, 2004 memorandum, Ms. Gonzales recorded that Gambro would terminate Ms. Nguyen's employment "[d]ue to continual performance issues... and her current breach of confidentiality... ."  On Ms. Nguyen's termination notice, which Mr. Boltz, Ms. Gonzales, and Mr. Genkinger all signed on February 26, 2004, as ground for the discharge the box labeled "Unsat per/behavior" was checked.  Immediately following is a line, which was not checked, labeled "Violate Rule/Policy/Proc."  Mr. Boltz, Ms. Gonzales, and Mr. Genkinger all

assert that Ms. Nguyen's breach of confidentiality was the primary motivation for their decision to fire her.

Ms. Nguyen testified in deposition that she understood that she was supposed to speak English on the production floor. She had spoken Vietnamese without incident for several years before Gambro promulgated the English language guidelines. She admitted having received a written warning from Ms. Gonzales. She asserted that her conversations in Vietnamese were not about Ms. Suharsono but rather about personal family issues and that other workers on the production line spoke in their native tongues about personal matters. She admitted that she was advised to keep confidential her conversation with Ms. Gonzales and Mr. Genkinger and she does not deny that she agreed to do so.

On the question whether she kept her pledged confidence Ms. Nguyen contradicted herself, first testifying that she immediately told a woman named "Tess" about the conversation, next claiming that Ms. Gonzales and Mr. Genkinger sent her straight home after the confidential conversation without the opportunity to communicate with any of her co-workers, and finally stating that she answered her co-workers' inquiries about her visit to Ms. Gonzales' office. Though she believes that she was fired for speaking Vietnamese, she admits that Ms. Gonzales told her that she was fired for breaching confidentiality. She does not believe that she was fired because of her sex, race, or national origin. By affidavit Ms. Nguyen has asserted that Ms. Gonzales enforced the English-language guidelines only against her.

Thy Tran, with whom Ms. Nguyen engaged in conversations in Vietnamese, has related by affidavit the substance of several such conversations. The two spoke about Ms. Nguyen's family and her previous jobs. Ms. Nguyen warned Ms. Tran not to speak Vietnamese in front of

Ms. Suharsono, who, according to Ms. Nguyen, "was always kissing butt."  Declaration of Thy

Tran, 3.  Ms. Tran states that she was reprimanded for that incident.

Teresita Wells, another co-worker who labored under Ms. Gonzales' supervision, has

stated by affidavit that Ms. Gonzales "called a meeting one day and announced that from then on

everyone was required to speak English only at all times when they were on the premises."

Declaration of Teresita Wells, 1.  She does not indicate whether she read the guidelines.  She

asserts that, though people other than Ms. Nguyen spoke in languages other than English, only

Ms. Nguyen was punished.

**B.      Discussion**

Ms. Nguyen presses claims for violations of unspecified provisions of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*.  I understand her claims to be of two

varieties.  First, she claims that Gambro discriminated against her on the basis of her ethnicity,

national origin, sex, or some combination of these.  Second, she claims that Gambro retaliated

against her.

The purpose of a summary judgment motion is to assess whether trial is necessary.

*White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  I shall grant summary judgment if

the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the

governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The

non-moving party has the burden of showing that there are issues of material fact to be

determined.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party seeking summary

6

judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Id.* at 323; *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992).

Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex* at 324.

### 1.    Discriminatory discharge claims

Gambro proffers as justification for its discharge of Ms. Nguyen her breach of the confidentiality that she promised to Ms. Gonzales and Mr. Genkinger. It argues that Ms. Nguyen cannot, as a matter of law, make a *prima facie* showing of discrimination and that, in any event, its own proffered justification for termination rebuts any claim of discrimination.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). Ms. Nguyen may prove a violation of Title VII either with direct evidence or by successfully navigating the burden-shifting analysis of *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  She has provided no direct evidence of discrimination.

Ms. Nguyen under *McDonnell Douglas* carries the initial burden of making a *prima facie* showing that she was (1) within a protected group; (2) doing satisfactory work and otherwise qualified for the position; (3) discharged; and (4) replaced by or treated less favorably than a person outside the protected group.  *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995).  As Gambro points out, Ms. Nguyen's showing fails for three reasons.  First, she cannot show that she was qualified for her position.  In fact, the undisputed evidence is that she was not.  Second, while Gambro does not question the quality of Ms. Nguyen's work product, it is undisputed that her personal behavior on the production line was unsatisfactory and had a deleterious effect on at least one of her working relationships.

Third, Ms. Nguyen has produced no evidence that Gambro replaced her with a non-Vietnamese worker or that similarly-situated non-Vietnamese workers were given more favorable treatment than she.  On this last point, Ms. Nguyen has repeatedly asserted, in deposition and by affidavit, that co-workers spoke languages other than English on the production line without consequence to their employment.  To succeed on a claim of disparate treatment, Ms. Nguyen must show that she was treated differently than other similarly situated employees who violated work rules of comparable seriousness.  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997).  Similarly-situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline.  *Id.*; *Rivera v. City and County of Denver*, 365 F.3d 912, 922 (10th Cir. 2004).  Though Ms. Nguyen has testified that other workers spoke languages other than English, nothing

8

in the record indicates that any of those employees violated the guidelines or, more significant, breached an obligation to maintain confidentiality concerning a dispute with a co-worker.

Even if Ms. Nguyen had established a *prima facie* case, her claims would fail because Gambro has articulated and demonstrated a legitimate, nondiscriminatory reason for her discharge. *Aramburu*, 112 F.3d at 1404. Ms. Nguyen has not answered Gambro's evidence that she breached her confidentiality obligation except with her own inconsistent statements in deposition. Ms. Gonzales and Mr. Genkinger both have affirmed the substance of Gambro's defense. Also, the termination notice supports Gambro's proffered justification. Mr. Boltz could have indicated in the place provided on the form that Ms. Nguyen was discharged for violating a company rule, policy, or procedure. Instead, the form indicates that Gambro discharged Ms. Nguyen for unsatisfactory behavior, a broader category consistent with Ms. Gonzales' recitation of events.

Ms. Nguyen has not presented evidence that her termination was the result of her Vietnamese ancestry or that the reason that Gambro offered was a mere pretext. *Aramburu*, 112 F.3d at 1403. I decline Ms. Nguyen's invitation to speculate concerning Gambro's animus toward Vietnamese persons absent evidence, which Ms. Nguyen has not produced, that her breach of her confidentiality obligation was not the actual reason for her discharge. And though Ms. Nguyen argues that Gambro's English language guidelines are *per se* unlawful, she has produced no evidence that the guidelines factored in Mr. Boltz's decision to fire her. Gambro might reasonably have objected to Ms. Nguyen's offending behavior whether or not the guidelines prohibited that behavior. In fact, Ms. Nguyen elsewhere argues that the guidelines could *not* have resulted in her termination because her personal conversation with Ms. Tran did

9

not violate the guidelines, which require employees to use English only when communicating process-related issues.

Though Ms. Nguyen's speech to Ms. Tran in Vietnamese no doubt precipitated her dismissal, what caused her to alight in Ms. Gonzales' office was not the language in which she spoke but rather that she appeared to be speaking disrespectfully about Ms. Suharsono in a language that Ms. Suharsono could not understand.  Whether she had spoken in German, Swahili, or Farsi, the result would have been the same.

Ms. Nguyen makes a point to deny that Ms. Suharsono was a subject of her conversation with Ms. Tran.  The factual dispute – Ms. Tran has directly contradicted that testimony – is immaterial because nothing in the record indicates that Gambro's decision to fire Ms. Nguyen depended upon the actual substance of that conversation.  Ms. Gonzales' stated concern was the detriment that Ms. Nguyen caused to the workplace environment.

**2.      Retaliatory discharge claim**

Ms. Nguyen's claim for retaliatory discharge rests on her proposal to remove a comma. In her deposition Ms. Nguyen testified that she complained about the English language guidelines and threatened to hire an attorney in order to pursue a claim against Gambro.  She claimed to have told Mr. Genkinger that "if [Ms. Gonzales] doesn't leave me alone, so I will hire the lawyer about Michelle harassment and discriminated.  That's what I told Mark on the second day, before I got fired."  Videotaped Deposition of Dung Nguyen, 143.  When asked to explain what she meant by "second day," Ms. Nguyen stated that the "first day" was the day of her discharge.  *Id.* at 142.

Ms. Nguyen now argues that she issued her threat two days before Gambro fired her. From this purported chronology she asks me to infer that Gambro fired her in retaliation for her assertion of rights.  I need not consider the proposed inference because no evidence exists for the alleged chronology.  Ms. Nguyen asks me to ignore the comma in the second sentence of her deposition recitation.  I cannot rewrite the stenographic evidence merely because Ms. Nguyen would have me read it differently.

Even if Ms. Nguyen notified Mr. Genkinger of her intention to hire an attorney on February 27, the decision to fire her had been made the day before, February 26, as evidenced by the notice of termination, Ms. Gonzales' memorandum, and the testimony of Messrs. Boltz and Genkinger and Ms. Gonzales.  Because she has produced no evidence that she engaged in protected activity before or contemporaneous with her discharge and thus also cannot demonstrate causation, Ms. Nguyen cannot, as a matter of law, establish a *prima facie* claim for retaliation.  *Sanchez v. Denver Public Schools*, 164 F.3d 527, 533-534 (10th Cir. 1998); *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1234-1235 (10th Cir. 2000).

Accordingly, it is ORDERED that

1) the defendants' motion to dismiss or, in the alternative, to strike is DENIED;

2) the defendants' motion for summary judgment is GRANTED; and

3) judgment shall enter for the defendants on all claims with costs.


Dated: July   25  , 2005, in Denver, Colorado.

BY THE COURT:


  s/Lewis T. Babcock
Lewis T. Babcock, Chief Judge
